IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RITA D. PULLIAM,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )        1:13CV176
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of             )
Social Security,                    )
                                    )
            Defendant.              )


                **MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

      Plaintiff Rita D. Pulliam ("Plaintiff") brought this action

pursuant to Sections 205(g) and 1631(c)(3) of the Social

Security Act (the "Act"), codified as amended at 42 U.S.C.

§§ 405(g) and 1383(c)(3), to obtain review of a final decision

of the Commissioner of Social Security ("Commissioner") denying

her claims for Disability Insurance Benefits and Supplemental

Security Income under Titles II and XVI of the Act.

      Presently before this court are Plaintiff's Motion for

Judgment and accompanying brief (Docs. 9, 10), and the

Commissioner's Motion for Judgment on the Pleadings and

accompanying memorandum (Docs. 12, 13). This court also has

before it the certified administrative record,[1] and this matter is now ripe for adjudication.  After a careful consideration of the evidence of record, the decision of the Administrative Law Judge ("ALJ"), and the governing legal standard, this court finds that remand is proper.

## I.    BACKGROUND

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in October of 2008, alleging a disability onset date of August 23, 2007. (Tr. at 114-25.) The applications were denied initially and upon reconsideration. (Id. at 55-66, 77-94.) Plaintiff then requested a hearing before an ALJ. (Id. at 95-96.)  At the March 14, 2011 hearing, were Plaintiff, her counsel, and a vocational expert

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 7.)

("VE"). (Id. at 23-54.)  After the hearing, the ALJ determined
that Plaintiff was not disabled under the Act.[2]  (Id. at 13-22.)

More specifically, the ALJ concluded (1) that Plaintiff had
not engaged in "substantial gainful activity" during the
relevant period, and (2) that Plaintiff's fibromyalgia,
affective mood disorder (major depressive disorder, recurrent,
severe with psychotic features; rule out bipolar disorder),
migraine headaches, and degenerative changes to the lumbar spine
were severe impairments.  (Id. at 15.)  However, the ALJ
concluded that the disorders did not meet or equal a listed
impairment.  (Id. at 17.)

---

[2] "The Commissioner uses a five-step process to evaluate
disability claims." Hancock v. Astrue, 667 F.3d 470, 472-73
(4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4);
416.920(a)(4)).  "Under this process, the Commissioner asks, in
sequence, whether the claimant: (1) worked during the alleged
period of disability; (2) had a severe impairment; (3) had an
impairment that met or equaled the requirements of a listed
impairment; (4) could return to [his] past relevant work; and
(5) if not, could perform any other work in the national
economy." Id.  A finding adverse to the claimant at any of
several points in this five-step sequence forecloses a
disability designation and ends the inquiry.  Id.

-3-

The ALJ then determined that Plaintiff had the Residual Functional Capacity ("RFC")[3] to perform light work, so long as (1) she was limited to sitting, standing, and/or walking for six hours in an eight-hour workday, (2) she had the option to sit/stand at will, (3) she did not climb ropes or ladders, (4) she was limited to only occasionally climbing stairs and ramps and only occasionally stooping, bending, crouching or squatting, (5) she was limited to frequently reaching, handling, and fingering, and (6) she was limited to simple, routine, repetitive tasks in a non-production and non-quota based environment. (Id. at 18.)

The ALJ further found as part of Plaintiff's RFC that she was capable of making simple, work-related decisions and could work in the presence of co-workers, but not in close coordination with them. (Id.) The ALJ also found that Plaintiff was not to work with the general public, but that she could

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (citation omitted). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63 (citing 20 C.F.R. § 404.1529(a)).

relate appropriately with supervisors and could handle no more than frequent changes in work setting or assignment. (<u>Id.</u>) The ALJ also concluded that Plaintiff could maintain focus throughout the day. (<u>Id.</u>)

The ALJ then concluded that Plaintiff was unable to perform any past relevant work. (<u>Id.</u> at 21.) Next, based on Plaintiff's age as a "younger individual," her high school education and ability to communicate in English, her work experience, and her RFC, the ALJ found that there were jobs in the national economy that she could perform. (<u>Id.</u>) Accordingly, the ALJ entered a Decision that Plaintiff was not disabled and denied her benefits. (<u>Id.</u> at 22.)

Plaintiff requested that the Appeals Council review the ALJ's Decision. (<u>Id.</u> at 7-9.) On January 4, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (<u>Id.</u> at 1-4.) Plaintiff then initiated this action.

## II.  <u>LEGAL STANDARD</u>

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Fray v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).

"The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows

-6-

reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." <u>Hancock</u>, 667 F.3d at 472 (citation omitted).

## III. <u>PLAINTIFF'S ASSERTIONS OF ERROR</u>

Plaintiff asks this court to reverse the Decision of the Commissioner, and in support of her request, she makes several arguments.  First, Plaintiff contends that the ALJ's finding that she can focus throughout the day is not supported by substantial evidence. (Pl.'s Br. in Supp. of Mot. for J. (Doc. 10) at 3.) Second, Plaintiff contends that the ALJ failed to address the opinion of Julia Brannon, Ph.D., regarding Plaintiff's ability to concentrate. (<u>Id.</u>) Third, Plaintiff contends that the ALJ's hypothetical question to the VE did not contain all the limitations supported by the record.  (<u>Id.</u>)

Moreover, upon review of the ALJ's Decision, it appeared to this court that the recent ruling of the United States Court of Appeals for the Fourth Circuit in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015) may be applicable.  Consequently, the court afforded the parties an opportunity to brief the impact, if any, of <u>Mascio</u> on the ALJ's analysis. (Text Order 06/29/2015.) The court has received and reviewed the Commissioner's briefing (Doc. 18), Plaintiff's supplemental response (Doc. 19), the

–7–

entire record, and all additional pleadings. As explained below, remand is in order.

## IV. <u>ANALYSIS</u>

The gravamen of Plaintiff's arguments is that the ALJ materially erred in assessing her ability to focus. For the following reasons, the court agrees and concludes remand is proper.

### A. <u>The ALJ Failed to Weigh Dr. Brannon's Medical Opinion</u>

As noted, Plaintiff contends that the ALJ did not properly weigh the medical opinion of a consulting physician, Dr. Julia M. Brannon, and that this error was not harmless. Under Social Security Administration regulations,

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration].

20 C.F.R. §§ 416.927(e)(2)(ii) & 404.1527(e)(2)(ii). <u>See also</u> Social Security Ruling ("SSR") 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, *7 (July 2, 1996) (concluding that "[t]he RFC assessment must always consider and address

-8-

medical source opinions" and "[i]f the RFC assessment conflicts
with an opinion from a medical source, the adjudicator must
explain why the opinion was not adopted"); SSR 96-6p, Policy
Interpretation Ruling Titles II and XVI: Consideration of
Administrative Findings of Fact by State Agency Medical and
Psychological Consultants and Other Program Physicians and
Psychologists at the Administrative Law Judge and Appeals
Council Levels of Administrative Review; Medical Equivalence,
1996 WL 374180, at *1 (July 2, 1996) (concluding that ALJ's "may
not ignore these opinions and must explain the weight given to
these opinions in their decisions").  The court "cannot
determine if findings are unsupported by substantial evidence
unless the Secretary explicitly indicates the weight given to
all of the relevant evidence."  Gordon v. Schweiker, 725 F.2d
231, 235 (4th Cir. 1984).

Nevertheless, an ALJ need not discuss each item of evidence
in the record, but instead may limit explanation of the weight
given "to obviously probative exhibits."  Id. at 236 (citation
omitted).  Furthermore, an ALJ's failure to expressly state the
weight given to a medical opinion may be harmless error, when

the opinion is not relevant to the disability determination or when it is consistent with the ALJ's RFC determination.[4]

Here, Plaintiff was evaluated by Dr. Brannon on January 5, 2009. (Tr. 263-66.) Dr. Brannon reached the following conclusions:

> Ms. Pulliam is able to understand, retain simple instructions. She has difficulty performing tasks requiring concentration and focus. Her general knowledge and practical judgment appear to be well below average. She has low educational attainment and a few environmental resources. It is somewhat unusual for a person with her work history to have such extremely low general fund of knowledge; however, she does have low educational attainment and grew up in a very abusive situation as a child, which may contribute to her deficit of information and academic achievement. She appears to have gotten along well with people in the past and should be able to do so currently except for the major depressive symptoms, which would interfere with her relationship. The symptoms of major depression include sad mood, fatigue, feelings of hopelessness, suicidal ideation, and some reported symptoms that are consistent with psychotic functioning. In other words, Ms. Pulliam reports hearing whispers and seeing shadows that are fairly consistent. However, there is no ongoing

---

[4] See, e.g., Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005) (concluding that court need not evaluate propriety of weight given to treating physician opinion that was submitted after date last insured and "not relevant" to the claimed period of disability); Morgan v. Barnhart, 142 F. App'x 716, 722-23 (4th Cir. 2005) ("[A]ssuming . . . that this opinion is a medical opinion due special weight under the treating-physician rule, any error in failing to credit this opinion was harmless."); Yuengal v. Astrue, No. 4:10-CV-42-FL, 2010 WL 5589102, at *9 n.9 (E.D.N.C. Dec. 17, 2010) (unpublished) (concluding that the failure to acknowledge medical opinions was harmless error).

symptoms consistent with command hallucinations or
other psychotic functioning. She has very poor mental
computation and would have difficulty managing
benefits in her own best interest given her extremely
low functional aptitude and arithmetic skills.

(Id. at 265-66.)

At step two of her Decision, the point at which the ALJ
found Plaintiff to have an affective mood disorder, the ALJ in
this case specifically named Dr. Brannon and described her
findings in a manner similar to those recited above. (Tr. at
16.)

Next, at step three, the point at which the ALJ concluded
that Plaintiff did not meet or equal a listing, the ALJ alluded
to Dr. Brannon's report when she (that is, the ALJ) found

[w]ith regard to concentration, persistence or pace,
the claimant has moderate difficulties. The claimant
has reported difficulty concentrating (Exhibit 23F).
She was noted in a consultative examination to be
capable of understanding and retaining simple
instructions, but it was noted that she would have
difficulty with tasks requiring concentration and
focus (Exhibit 7F). Nonetheless, the claimant
testified that she watches television and does
household chores, both of which require some ability
to sustain attention and concentration for extended
periods.

(Tr. at 17.)

Last, in determining Plaintiff's RFC, the ALJ again alluded
to Dr. Brannon's report in concluding that Plaintiff's
activities of daily living were inconsistent with her

-11-

allegations of total disability, in part, because, "In December 2008, she reported that on a typical day she fixes lunch and breakfast. She does the sweeping, mopping, and basic housecleaning, and then sits down because her legs are 'giving out'. She indicated that she did not require assistance with grooming or bathing, and she cooked meals occasionally." (Id. at 19.)

The problem with all this, however, is that while the ALJ describes Dr. Brannon's report, and even references it three times, she never specifically weighed Dr. Brannon's medical opinion. This is a violation of SSR 96-6p, which, as noted, obliges ALJs to "explain the weight given to [a medical opinion] in their decisions." As noted, errors such as this can sometimes be harmless. This particular error is troubling, however, because, though Dr. Brannon found that Plaintiff "has difficulty performing tasks requiring concentration and focus," (Tr. at 265), the ALJ found in Plaintiff's RFC that "[s]he has the ability to maintain focus throughout the workday." (Tr. at 18).[5] Without an explanation from the ALJ to reconcile this apparent

---

[5] The functional area of "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(3).

-12-

discrepancy, the undersigned is unable to determine if the ALJ intended to give little weight to Dr. Brannon's opinion or if the ALJ inadvertently overlooked key aspects of it.[6] Consequently, the failure to explain why Plaintiff can maintain focus throughout the workday is not a harmless error.

**B.  The ALJ's Evaluation of Plaintiff's Deficit in her Ability to Focus was Inadequate**

Moreover, the Decision of the ALJ is problematic for another, albeit overlapping, reason.  Specifically, the court has also considered the ALJ's Decision as it relates to the dictates of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).  As explained below, because the ALJ's evaluation of Plaintiff's

---

[6] See, e.g., Confere v. Astrue, 235 F. App'x 701, 703 (10th Cir. 2007) (finding error in part because "[t]he ALJ mentions [consulting psychologist's] assessment during his discussion of the evidence, but he does not state that he is rejecting any part of it and gives no indication as to why he would disregard [that part of the] conclusion that [was inconsistent with the ALJ's RFC determination]"); Ferguson v. Astrue, No. 4:09-03310-RMG-TER, 2010 WL 5439755, at *4 (D.S.C. Dec. 28, 2010) (unpublished) ("When the ALJ fails to provide the reviewing court an explanation of the basis for finding, or not finding, functional restrictions, then the ALJ's decision is without substantial basis."); Krapf v. Astrue, No. 09-60763-CIV, 2009 WL 4892337, at *14 (S.D. Fla. Dec. 16, 2009) (unpublished) (finding error and remanding where "after acknowledging [state agency psychological consultant's] opinion, the ALJ never returned to it; he never accepted it, never rejected it, and never incorporated it into the RFC finding"); Payne v. Barnhart, 366 F. Supp. 2d 391, 402 (W.D. Va. 2005) (finding error, in part, because "while the ALJ discussed the findings of [state agency consulting] psychologist Wyatt, she neglected to state, or even hint, whether she was accepting or rejecting it").

"moderate limitation" in concentration, persistence, or pace was inadequate under Mascio, remand is also warranted.

As background, on March 18, 2015, the United States Court of Appeals for the Fourth Circuit published its opinion in Mascio. In Mascio, the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case. Specifically, the Fourth Circuit remanded Mascio because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. Mascio, 780 F.3d at 637-38.

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Id. at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the

-14-

latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id.  Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. Id.

Here, Plaintiff's case is distinct from Mascio in the sense that while Mascio's RFC limited him to only unskilled work, the RFC in this case included additional limitations (such as, for example, certain social limitations) and a finding that

Plaintiff can "maintain focus throughout the workday."[7] (Tr. at 18.) Yet, as in Mascio, the ALJ here has failed to explain why the moderate limitations in concentration, persistence, and pace found at step three did not translate to a limitation in the RFC assessment.

This is troubling because "[p]ursuant to Mascio, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace,

---

[7] The Commissioner cites two cases for the proposition that mental restrictions like those found by the ALJ here are sufficient to account for moderate limitations in concentration, persistence, and pace. (Def.'s Suppl. Br. (Doc. 18) at 3 citing Miles v. Colvin, No. 5:13-CV-878-FL, 2015 WL 1179522, at *13 (E.D.N.C. Mar. 13, 2015); Knott v. Colvin, No. 1:13CV332, 2014 WL 2453302, at *6 (M.D.N.C. June 2, 2014).) Nevertheless, both cases are pre-Mascio and are "unpersuasive to the extent that they contradict the Fourth Circuit." Hagedorn v. Colvin, Civil Action No. 2:12CV85-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015). Additionally, there are, in fact, a number of post-Mascio cases stating that a moderate limitation to simple, routine, repetitive tasks in a low production and/or socially isolated environment may be, without more, insufficient to account for moderate limitations in concentration, persistence, or pace. See, e.g., Hagedorn, 2015 WL 4410288; Taylor v. Colvin, Civil Action No. 7:14CV00616, 2015 WL 4400534 (W.D. Va. July 17, 2015); Hemp v. Comm'r, Soc. Sec. Admin., Civil No. SAG-14-2855, 2015 WL 4111483 (D. Md. July 7, 2015); Winkler v. Comm'r, Soc. Sec. Admin., Civil No. SAG-14-2720, 2015 WL 4069334 (D. Md. July 2, 2015); Bailey v. Colvin, C/A No. 5:14-CV-0248 DCN, 2015 WL 2449044 (D.S.C. May 21, 2015); Talmo v. Comm'r, Soc. Sec., Civil Case No. ELH-14-2214, 2015 WL 2395108 (D. Md. May 19, 2015); Scruggs v. Colvin, No. 3:14-cv-00466-MOC, 2015 WL 2250890 (W.D.N.C. May 13, 2015); Salmon v. Colvin, 1:12CV1209, 2015 WL 1526020 (M.D.N.C. Apr. 2, 2015).

the ALJ must either include a corresponding limitation in her
RFC assessment, or explain why no such limitation is necessary."
See Talmo v. Comm'r, Soc. Sec., Civil Case No. ELH-14-2214, 2015
WL 2395108, at *3 (D. Md. May 19, 2015).[8] Here, however, the ALJ
did neither, despite the fact that the ALJ's conclusion that
Plaintiff can "maintain focus throughout the workday" is
apparently at odds with Dr. Brannon's medical opinion indicating
that Plaintiff "has difficulty performing tasks requiring
concentration and focus." Consequently, the court concludes that
remand is proper so that the ALJ may build a logical bridge
between the evidence of record and its conclusions. Mascio, 780
F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate
limitation in concentration, persistence, or pace at step three
does not translate into a limitation in Mascio's residual

---

[8] See, e.g., Fisher v. Colvin, Civil No. TMD 14-1011, 2015
WL 5287120, at *9 (D. Md. Sept. 9, 2015) ("[T]he ALJ in his RFC
assessment and hypothetical questions to the VE also accounted
for Plaintiff's concentration and focus problems that would
cause her to be off task 5% of the workday.").

functional capacity . . . [b]ut because the ALJ here gave no explanation, a remand is in order.").[9]

## C.   The Commissioner's Argument that Any Errors here were Harmless is Unpersuasive

The Commissioner contends that the overlapping errors described above are harmless, because the ALJ gave "great weight" to the non-examining state agency physicians, who concluded that Plaintiff was not disabled. (Def.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Def.'s Mem.") (Doc. 13) at 6-9; Def.'s Suppl. Br. (Doc. 18) at 1-5.)  The court acknowledges that errors in cases such as this can, at times, indeed be

_____

[9] The ALJ's step three finding that Plaintiff demonstrated "some" ability to concentrate for "extended periods" because she could watch television and do chores does not provide a sufficient explanation under Mascio.  (Tr. at 17.)  Pre-Mascio, an ALJ's finding that a claimant had a moderate limitation, as opposed to a mild or no limitation, was generally insignificant.  See Handy v. Comm'r, Soc. Sec. Admin., Civil No. SAG-09-166, 2015 WL 9302972, at *3 n.4 (D. Md. Dec. 22, 2015).  The finding that potentially triggered a listing was that of a "marked" limitation.  Id.  Thus, the omission of a meaningful explanation to justify a "moderate" finding would have been, at most, harmless error.  Id.  Now, post-Mascio, a reviewing court must understand the rationale behind a finding of moderate limitation to assess the validity of the presence or absence of corresponding limitations in an RFC.  Id.  An ALJ finding a moderate limitation, therefore, has to ensure that the precise nature of that limitation is addressed in sufficient detail. Id.  Here, the step three analysis in this case does not meet that standard.

harmless.[10] In the context of the facts and circumstances of this case, however, the court is unwilling to find any error harmless for the following reasons.

First, as a general matter, it is the ALJ, as opposed to the non-examining state agency medical consultants, who is tasked with reconciling conflicting evidence, performing a function-by-function assessment of a claimant's RFC, and making

---

[10] See, e.g., Bryant v. Colvin, 571 F. App'x 186, 190 (4th Cir.) ("The magistrate judge also found that the ALJ erred by failing to discuss a report written by consultative examiner Dr. Jethalal Harkhani in February 2007. See 20 C.F.R. § 404.1527(c) (obligating ALJs to 'evaluate every medical opinion' they receive). The ALJ found this error harmless as well because Dr. Harkhani's report was discussed by the two state agency consultants and was consistent with the medical evidence on the record. We likewise find the ALJ errors harmless and affirm the ALJ's determination of Bryant's RFC.") (emphasis added), cert. denied, ____ U.S. ____, 135 S. Ct. 727 (2014).

a disability determination.[11]  Second, in this case, the RFC

opinions of the non-examining state agency physicians are

potentially inconsistent, yet the ALJ grouped them together and

adopted both without distinguishing between them.  For example,

Dr. Lori Brandon Souther concluded that Plaintiff was moderately

limited in her ability to concentrate for extended periods; to

act within a schedule, maintain regular attendance, and to be

punctual; and to complete a normal workweek without

psychological interruptions. (Tr. at 281-82.) From this, she

concluded that Plaintiff "appears capable of maintaining the

attention/concentration required for [simple, routine,

---

[11] "[I]mportantly, however, the ALJ - as opposed to the state
agency medical consultants — is tasked with performing a
function-by-function assessment of a claimant's RFC," Williams
v. Colvin, CIVIL ACTION NO. 3:13CV701-RLV, 2015 WL 9094803, at
*12 (W.D.N.C. Dec. 16, 2015), and "is solely responsible for
determining the RFC of a claimant." Scruggs, 2015 WL 2250890, at
*3 (citation omitted); see also Garner v. Colvin, No.
1:12CV1280, 2015 WL 710781, at *8 (M.D.N.C. Feb. 18, 2015)
("Defendant argues that all three IQ tests were considered by
the state agency consultants and therefore the ALJ's failure to
weigh the tests explicitly was harmless. This argument
misunderstands the role of the state agency consultants. The ALJ
is required to balance conflicting evidence and make a
determination of disability, not the consultants. In doing so,
the ALJ is required to discuss relevant evidence that weighs
against his decision. The ALJ did not do this here.
Consequently, the undersigned cannot determine whether the ALJ's
decision was supported by substantial evidence because it is
impossible to tell what weight, if any, was given to the April
2005 and November 2009 IQ tests.") (footnote and citations
omitted).

repetitive tasks].” (Id. at 283.) However, Dr. Souther did not indicate how long Plaintiff could stay on task.

Dr. Steven E. Salmony, on the other hand, made similar initial findings and from these concluded that Plaintiff “has the ability to carry out very short and simple instructions and is or is not able to maintain attention and concentration for 2 hours at a time as required for the performance of simple tasks.” (Tr. at 321 (emphasis added).) Therefore, whereas Dr. Souther did not mention how long Plaintiff could be expected to concentrate, Dr. Salmony identified a period of two hours,[12] but then stated Plaintiff “is or is not able to maintain attention and concentration” for that duration. This does not clarify the

---

[12] There is some authority — at least in cases decided before Mascio — for the proposition that in a given case Social Security Regulation 96-9p, which speaks to customary breaks during a workday, fills the gap in the ALJ's express findings. See, e.g., Hawley v. Astrue, No. 1:09CV246, 2012 WL 1268475, at *7 (M.D.N.C. Apr. 16, 2012) (“Defendant correctly points to Social Security Regulation (‘SSR’) 96-9p, which provides a guideline for customary breaks during a work-day as follows: ‘. . . a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.’ Thus, customary breaks or ‘normal breaks,’ would reasonably occur approximately every two hours.”) (internal citation omitted), adopted by 2012 WL 3584340 (M.D.N.C. Aug. 20, 2012). However, even assuming that this remains a proper analysis post-Mascio, the court still concludes that remand is proper for the reasons articulated above.

issue of whether Plaintiff can focus throughout the day or even for two-hour increments.[13]

Third, and likewise, in crediting Drs. Salmony and Souther with "great weight," the ALJ in this case points to the fact that the opinions of both doctors "indicated that the claimant was capable of performing simple, routine, repetitive tasks in a low stress setting with limited social demands." (Tr. at 20.) However, nowhere in her two-sentence assessment of the non-examining state agency physicians does the ALJ make or acknowledge the distinction between performing simple tasks and the ability to stay on task, which was so critical to the Mascio decision. Given that the ALJ's Decision occurred prior to Mascio, this omission is disconcerting because it suggests that

_____

[13] At one point in the briefing, the Commissioner ascribes this language to a scrivener's error, (Def.'s Mem. (Doc. 13) at 11), and at another point in the briefing, she admits that this statement is "confusing," (Def.'s Suppl. Br. (Doc. 18) at 9 n.1), but argues it is immaterial given that Dr. Salmony ultimately found that Plaintiff "should be able to perform [simple, routine, repetitive tasks]." (Id.) The court agrees that this language adds an additional layer of uncertainty to the disposition of this case and finds that this uncertainty also weighs in favor of remand. Beyond this, the court only notes again that a limitation to simple, routine, repetitive tasks does not, without more, necessarily account for moderate deficits in concentration. The court recognizes that Mascio did not institute a per se rule mechanically requiring remand in all cases raising similar issues. However, given the factors outlined above, the court concludes that remand is in order in this particular case.

the ALJ in this case may have failed to make the meaningful distinction identified in <u>Mascio</u> between the ability to perform simple tasks and the ability to stay on task.

In sum, the court concludes that the ALJ erred in failing to weigh the medical opinion of Dr. Brannon. The ALJ erred further by failing to discharge her duty under <u>Mascio</u> to meaningfully explain why her step three findings regarding moderate limitations in concentration, persistence, and pace did not translate into a limitation in Plaintiff's RFC. To find these errors harmless, however, the court would need to reconcile apparent inconsistencies between Dr. Brannon's opinion and the ALJ's RFC, the apparent inconsistencies between the medical opinions of Drs. Souther and Salmony, and even the apparent inconsistencies within Dr. Salmony's own medical opinion. In the end, the court concludes that all this prevents

a meaningful review of the ALJ's Decision and that remand is therefore required.[14]

## V.   CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED** and that the matter is **REMANDED** for further administrative proceedings consistent with this Memorandum Opinion and Order.[15]   To this extent, the Commissioner's Motion for Judgment on the Pleadings (Doc. 16) is **DENIED**, and Plaintiff's Motion for Judgment on the Pleadings

---

[14] The court also notes that the ALJ used objectionable boilerplate language in her credibility analysis. (Tr. at 19 ("These symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.").) In Mascio, the Fourth Circuit held that this boilerplate "gets things backwards" and conflicts with the agency's own regulations, which require the ALJ to determine the extent to which a claimant's alleged functional limitations are consistent with the medical findings and other evidence. 780 F.3d at 639. The Fourth Circuit found, however, that any error associated with use of this boilerplate is harmless if the ALJ "properly analyzed credibility elsewhere." Id. The court need not, and does not, address whether the error here was harmless or prejudicial, but simply notes that the Commissioner should follow the dictates of Mascio on this issue on remand.

[15] This court notes that to the extent its order must be construed as a reversal to be within the scope of its powers under sentence four of 42 U.S.C. § 405(g), it shall be construed as such, however, given the reasoning behind this order and the mandate in Mascio itself that the case be vacated and remanded, see 780 F.3d at 640-41, this court orders that the decision be vacated.

-24-

(Doc. 11) is **GRANTED**. To the extent that Plaintiff's motion seeks an immediate award of benefits, it is **DENIED**.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 1st day of March, 2016.

_____
United States District Judge